## Commonwealth v. Palmer

*Sherman K. Levine*, for Commonwealth.

*Kenneth G. Palmer*, p. p., for defendant.

BRAHAM, P. J., December 29, 1950.—Defendant, Kenneth G. Palmer, is now undergoing imprisonment for a Federal offense in the Federal penitentiary at Alcatraz, Calif. The indictment against him at the above-stated number and term was found while he was serving his sentence in the penitentiary. He has filed a petition prepared by himself to have the indictment against him dismissed. The petition is not entirely in accord with practice in this State; but it has been an-

swered by the district attorney and the facts upon which defendant relies appear in his petition with sufficient clarity to enable us to decide with precision the question which he has raised.

The facts averred are these: "On or about Sept. 19, 1941" while defendant was "in the process of avoiding apprehension and arrest for the alleged commission of an offense against the law" defendant "allegedly assaulted one Ernest R. Hartman, Chief of Police, Borough of Ellwood City, Lawrence County, Pa.". Defendant was arrested by Hartman because of the assault and was held in custody by the State police. While he was in the custody of the Pennsylvania State Police, "as upon the aforesaid alleged offense against the laws . . . of Pennsylvania" (the assault upon Hartman), on September 25, 1941, the Commonwealth of Pennsylvania "surrendered the custody and control of the defendant to the United States Government, to be dealt with as the laws . . . of the United States provide". He was convicted in the District Court of the United States for the Western District of Pennsylvania at Pittsburgh and was committed to Alcatraz Penitentiary.

At the September sessions of 1942 defendant, being then in Alcatraz, was indicted at September sessions, 1942, no. 44, by the Grand Jury of Lawrence County, Pa., for the assault upon Hartman. The answer of the district attorney avers that the information was filed December 12, 1941, and was returned by the justice of the peace on July 20, 1942, whereupon the indictment was laid before the grand jury to toll the running of the statute of limitations. After the indictment was found, a warrant for the arrest of defendant was issued and a detainer lodged against him at the penitentiary in Alcatraz, Calif.

While not a determining fact, it is reasonably to be inferred from the record before us that the offense from

which defendant was fleeing when he committed the assault upon Hartman was the Federal offense of which he was convicted in the district court at Pittsburgh, Pa., and for which he is now serving sentence.

The gist of defendant's contention is that the Commonwealth of Pennsylvania, while it had defendant in its custody for an offense against its laws, turned him over voluntarily to the United States, another sovereignty, and thereby waived its right to proceed against him for the violation of its own laws.

Under modern law the mission, motive, or purpose inducing a person accused of being a fugitive from justice to leave the demanding State is ordinarily not determining: 22 Am. Jur. 262, §23. Some cases in the past have favored the view that when an offender has been removed from one State to answer a criminal charge in another State he is not a fugitive from justice and cannot be recalled by extradition to the State of the first offense. Typical of these cases is In re Whittington 34 Cal. App. 344, 167 Pac. 404. The modern view is better represented by State ex rel. Shapiro v. Wall, 187 Minn. 246, 244 N. W. 811, where it was held that a prisoner who has been removed from the demanding State by Federal authorities is nevertheless a fugitive from justice in the asylum State and must be delivered up upon extradition. To the same effect is In re Martin, 142 Kan. 907, 52 P.(2d) 1196, Brewer v. Goff, Sheriff et al., 138 F. (2d) 710.

In the case at bar defendant had not been indicted in Pennsylvania when the Federal authorities took charge of him. He was merely in custody. The courts of Pennsylvania and the District Court of the United States for the Western District of Pennsylvania both had jurisdiction over the place where he was arrested. The Federal offense and the State offense were really parts of the same crime. The officers who arrested him were Pennsylvania officers and they honored the

claim of the United States to try him first. It is only the Governor who has the right to waive the jurisdiction of the State; not a constable or State Police officer. Because defendant to a criminal charge has left the State with the knowledge and consent of the prosecuting authorities or witnesses is no reason for refusing to return him to the State: 22 Am. Jur. 264, §24.

In Com. ex rel. Kamons v. Ashe, 114 Pa. Superior Ct. 119, it was held that where defendant was convicted and sentenced for arson in Pennsylvania but during his term of imprisonment was extradited to Ohio to stand trial for a murder of which he was convicted and then brought back once more by extradition to Pennsylvania, there had been no such waiver of the Commonwealth's right as would entitle him to his release. When defendant was extradited to Ohio the order provided that if sentence of less than death or life imprisonment was imposed defendant should be returned to Pennsylvania. This was held to be good under the Act of April 21, 1927, P. L. 327, as amended, 19 PS §121, the waiver by the Governor being as provided by statute.

In the case at bar the Governor has never been asked to waive any right of the Commonwealth and has waived none. Defendant was merely brought to trial first for the Federal offense and when he has expiated that crime he may be returned to Pennsylvania and dealt with here. No reason for quashing or dismissing the indictment exists. The power of the district attorney with the approval of the court to prepare a bill of indictment and lay it before the grand jury without a previous hearing and binding over is well recognized: 1 Sadler on Criminal Procedure in Pennsylvania (2nd ed.) 255, §213; Commonwealth v. Ramsey, 42 Pa. Superior Ct. 25. This may be done to prevent the running of the statute of limitations: Commonwealth v. Strauss,

89 Pa. Superior Ct. 82, 95; Commonwealth v. Nayduch et al., 22 D. & C. 289.

Entertaining these views, we make the following

### Order

Now, December 29, 1950, defendant's petition for dismissal of the indictment against him is refused and dismissed. The clerk is directed to send a certified copy of this opinion and order to defendant at his place of imprisonment at the Federal penitentiary at Alcatraz, Calif., and a copy of this order to the warden of that penitentiary.